The Chief Justice
delivered the opinion of the Court:
*294 This is an action upon a judgment rendered in Faulkner county, in the State of Arkansas, against the defendant, Thomas M. Bowen and others. It is alleged in the declaration to have been recovered by the plaintiff against the defendant on the 2d day of August, 1875, for the sum of $6,621.48, and interest thereon at the rate of fifty per cent, per annum until paid. It is averred in the declaration that the State of Arkansas now brings the action instead of the county of Faulkner, because by an act of the legislature of the State of Arkansas the county of Faulkner was- dissolved, and the statute further provided that all rights of action that the county of Faulkner had at the time of such dissolution should be prosecuted by the State of Arkansas for the use of Faulkner county.
The defendant, Bowen, pleads—
1. Nul tiel record.
2. That the said alleged cause of action did not accrue within three years next preceding the bringing of this suit.
3. That at the time of said alleged recovery of judgment the defendant was not, and for several years theretofore had not been a resident of the State of Arkansas, but was then, and for several years prior thereto had been, and still is, a citizen of the State of Colorado, and that the defendant was not at any time between the commencement of the proceedings in which said alleged recovery was had, and the date thereof, to wit, the 2d day of August, A. D. 1875, within the jurisdiction of said county court of the county of Faulkner, in the State of Arkansas, and that he had no legal notice of the pending of said proceedings by service of process or otherwise, and that he did not at any time during the pendency of said proceedings, either before or after the date of said alleged recovery, voluntarily appear and subject himself to the jurisdiction of said court, nor did he authorize, empower, direct or permit, either directly or indirectly, any agent, attorney, counsellor or other person whatsoever, to appear for him in the said proceedings pending in the said county court of Faulkner County, or to represent him in said matter, or in anything connected therewith, in any manner whatsoever.
*295 On the trial of the case a verdict was rendered for the plaintiff, and a motion for a new trial made by the defendant, urging a number of reasons for the reversal of the judgment rendered upon the verdict of the jury and the granting of a new trial. In the course of the hearing, and after the testimony was all given to the jury, a motion was made by the counsel for the defendant to take the case from the jury and that the jury should be directed to return a verdict for the defendant. This was overruled, and the court charged the jury that the judgment of the Faulkner County court against Bowen was conclusive as to his indebtedness to Faulkner County, and entitled the plaintiff to recover, unless the jury were satisfied that the attorney, Whipple, had no authority to appear for Bowen. Exception was taken to this charge. ’
It appears upon the face of this record, and especially by the transcript of the proceedings in the State of Arkansas, that the foundation of the original suit was a collector’s bond! given by one Benton Turner, a collector, with the defendant and several others as sureties, for the faithful performance of his duty as collector of taxes, in the county of Faulkner, State of Arkansas. It is alleged in the declaration filed in the suit in Arkatisas, that Turner was indebted in a certain sum to the county of Faulkner for the amount of taxes collected by him as such collector and not accounted for. It is further shown by this record that not only was the original suit for this, but in the rendition of the judgment, pursuant to the provisions of the statute of Arkansas, there was included a penalty of 25 per cent, on the amount so found to be due from him as collector.
The question arises, whether, under such circumstances, this court should, by virtue of the laws of the United States or any comity that prevails between the States of this Union, entain jurisdiction of this action. It has been very well settled that one State will not take cognizance of or enforce the judgment of another State where such judgment is founded upon penal laws, or laws relating exclusively to the collection of the revenues of the State wherein it is rendered. Such laws relating to the domestic economy of the State, and the *296 1 management of its domestic affairs, are to be enforced 1 directly by the courts of the State which enacts the laws, and 1 not by the courts of other jurisdictions. This rule prevails 1 under the international law between nations, and it has been Iheld repeatedly that it prevails in the United States as between the States, and is not within the provision of the Constitution of the United States which provides “That the judgments of the courts of any State are to have such faith and credit given to them in every court within the United States as they have by law or usage in the State in which they . were rendered. ’ ’ This does not relate to actions to recover penalties and fines, nor to actions authorized by statutes relating directly to the collection of the revenues of a State, or enforcement of fines, penalties and forfeitures for noncompliance with or violations of such statutes.
We find this principle clearly laid down in the case of The State of Wisconsin vs. The Pelican Insurance Co. of New Orleans, reported in 127 U. S., pages 289, 291, 292 and 293.
It was said by Justice Gray, in delivering the opinion of the court: “By the law of England and of the United States, the penal laws of a country do not reach beyond its own territory, except when extended by express treaty or statute to offenses committed abroad by its own citizens; and they must be administered in its own courts only, and cannot be enforced by the courts of another country. ’ ’ Wheat. Internat. E. 8th ed., Secs. 113, 121.
Chief Justice Marshall stated the rule in the most condensed form, as an incontrovertible maxim: ‘The courts of no country execute the penal laws of another. ’ ’
‘ ‘ The rule that the courts of no country execute the penal laws of another applies not only to prosecutions and sentences for crimes and misdemeanors, but to all suits in favor of the State for the recovery of pecuniary penalties for any violation of statutes for the protection of its revenue, or other municipal laws, and to all judgments for such penalties. If this were not so, all that would be necessary to give ubiquitous effect to a penal law would be to put the claim for a penalty into the *297 shape of a judgment. Whart Confl. R., sec. 833; Westlake, Internat. L., 1st ed., sec. 388; Piggott, Foreign Judg., 209, 210.
‘ ‘ The application of the rule to the courts of the several States and of the United States is not affected by the provisions of the Constitution and of the act of Congress, by which-the judgments of the courts of any State are to have such faith and credit given to them in every court within the United States as they have by law or usage in the State in which they were rendered. Const., Art. 4, Sec. 1: Act May 26, 1790, Chap. 11, 1 Stat. at R., 122, Rev. Stat., Sec. 905.
1 ‘ Those provisions establish a rule of evidence rather than of jurisdiction. While they make the record of a judgment, rendered after due notice in one State, conclusive evidence in the courts of another State, or of the United States, of the matter adjudged, they do not affect the jurisdiction, either of the court in which the judgment is rendered, or of the court in which it is offered in evidence. Judgments recovered in one State of the Union, when proved in the courts of another government, whether state or national, within the United States, differ from judgments recovered in a foreign country in no other respect than in not being re-examinable on their merits, nor impeachable for fraud in obtaining them, if rendered by a court having jurisdiction of the cause and of the parties. Hanley vs. Donoghue, 116 U. S., 1, 4.
“The essential nature and real foundation of a cause of action are not changed by recovering judgment upon it; and the techinal rules, with regard to the original claim as merged in the judgment, and the judgment as implying a promise by the defendant to pay it, do not preclude a court, to which a judgment is presented for affirmative action (while it cannot go behind the judgment for the purpose of examining into the validity of the claim), from ascertaining whether the claim is really one of such á nature that the court is authorized to enforce it. Louisana vs. New Orleans, 109 U. S., 285, 288, 291, Louisanna vs. St. Martha’s Parish, 112 U. S., 716; Chase vs. Custis, 113 U. S., 452, 464; Boynton vs. Ball, 121 U. S. 457, 466.
*298 ‘ ‘ From the first organization of the courts of the United States, nearly a century ago, it has always been assumed that the original jurisdiction of this court over controversies between a State and citizens of another State, or of a foreign country, does not extend to a suit by a State to recover penalties for a breach of her own municipal law. This is shown both by the nature of the cases in which relief has been granted or sought, and by acts of Congress and opinions of this Court more directly bearing upon the question.”
The justice then proceeds to cite and analyze the cases which have been decided by the Supreme Court from its first organization to the present time relating to this subject.
It clearly appears from the transcript offered in evidence, and which was admitted against the objection of the defendant that the judgment in Arkansas was predicated upon a bond given by an alleged collector of taxes for the county of Faulkner, for the faithful performance of his duties, and that it related strictly to the collection of taxes in that county.
It belongs to the revenue system of the State of Arkansas.
It provided for heavy penalties, not only included in the judgment, but provided'that the judgment itself, including the penalty of 25 per cent., should have an added percentage of 50 per cent, every year until the judgment should be paid.
The amount of this judgment at the present time under the laws of Arkansas would be in the neighborhood of $30,000 if you add the 50 per cent, interest provided by the statute of Arkansas. Under the authorities to which I have called attention, it is entirely clear that all such statutes must be administered by the courts of the State that enact them; and that even the original cause of action could not be prosecuted in ‘in another State. As indicated by the opinion of the Supreme Court of the United States, to which I have before referred, they cannot avoid this provision of law by first obtaining a judgment upon the cause of action in the courts of Arkansas, and then take a transcript of that judgment to another jurisdiction, and ask the courts of the latter to receive it as a judgment of the former jurisdiction. But the courts are *299 authorized under such circumstances when besought to enforce the judgment of another State to look to what precedes the judgment, not for the purpose of determining anything about the merits of the case, but to determine whether or not it is such a judgment as they are authorized to take cognizance of and enforce as the judgment of another State. We think that the court was in error in instructing-the jury that the judgment of Faulkner County court against Bowen was conclusive as to his indebtedness to Faulkner County. It was the duty of the court, upon the presentation of the transcript, and when an examination of it disclosed that it related to the revénue laws of the State of Arkansas, and that it included large penalties as a part of the judgment, to have dismissed the action, and to have said that this court could not assume the power to enforce such a judgment.
The judgment below will be reversed, and, the cause remanded to the Circuit Court, with direction to enter judgment for the defendant.