## JACKSON *v.* CLIFFORD.

---

Local Insurance Companies, Liabilities of Trustees of; Statutory Construction; Fraud; Evidence.

1. Secs. 566 and 567, R. S. D. C., requiring insurance companies incorporated under the laws of the District to publish annually, within twenty days from the 1st of January, a report of their assets and liabilities, and making all of the trustees of any company liable for existing corporate debts for failure to fulfil such requirement, are penal in their nature and are to be strictly construed.
2. The trustees liable under such sections are those who are in control of the affairs of the corporation at the time of the default made, and who have incurred the penalty by their neglect of duty.
3. If such a trustee resign, as he may do even during the first year of the incorporation of the company, he is not liable for debts incurred by the subsequent default of the officiating trustees to make and file the report required by the statute.

4. Fraud in the making and acceptance of the resignation of such a trustee is not to be presumed.

5. The resignation of such a trustee may be proved by the oral testimony of witnesses, where the documentary evidence of such resignation is lost or is out of the jurisdiction and difficult if not impossible to trace.

6. *Semble.* In a suit against such a trustee under the statute mentioned a judgment recovered by the plaintiff against the insurance company is inadmissible in evidence.

No. 360. Submitted December 3, 1894. Filed February 5, 1895.

Hearing on an appeal by the plaintiffs from a judgment in an action against the executors of the deceased member of a board of trustees of an insurance company under Secs. 566 and 567, R. S. D. C. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an action against the executors of a deceased member of an original board of trustees of an insurance company, organized under the general incorporation law contained in the Revised Statutes of the United States relating to the District of Columbia. The incorporation of such insurance companies is provided for, among others, in Class 4 of the general incorporation statute, in the Sections 553 to 593. Section 553 of the Revised Statutes provides, that any three or more persons who desire to form a company for any of the purposes therein mentioned, including insurance business, may make, sign, and acknowledge a certificate of incorporation, in which they must state the several requisites to corporate existence, and among others, the number of trustees who shall manage the concerns of the company for the first year, and their names. The Chesapeake Fire Insurance Company was incorporated under this general incorporation law, on the 8th day of May, 1886. In the certificate of incorporation it was declared that until otherwise provided by the stockholders, there should be four directors who should manage the affairs of the company, and four persons were named and appointed therein to be such directors for the first year of

the existence of the company, and among those named and appointed was L. G. Marini, the testator of the defendants, and he signed and acknowleged the certificate as one of the corporators. The plaintiff, Benjamin E. Jackson, became insured in this company on the 2d day of August, 1886, by policy of that date, to the extent of $1,000, the risk to continue from the date of the policy to the 1st day of October, 1886. On the 22d of September, 1886, the fire occurred, producing the loss, and thereupon proof of loss was furnished to the company, but the company has failed to pay. The company, it seems, has become insolvent, and ceased, some time since, to prosecute its business. It appears from the testimony in the cause, that Marini, the defendant's testator, resigned his position as director or trustee of the company, in November, 1886, and that such resignation was accepted by a meeting of a majority of the stockholders of the company.

This action is instituted under Sections 566 and 567 of the Revised Statutes, which are as follows:

" 566. Every such company shall annually, within twenty days from the first of January, make a report, which shall be published in a newspaper in the District, which shall state the amount of capital and the proportion actually paid in, and the amount of existing debts; which report shall be signed by the president and a majority of the trustees, and shall be verified by the oath of the president or secretary of the company, and filed in the office of the Recorder of Deeds of the District.

" 567. If any company fails to comply with the provisions of the preceding section, all the trustees of such company shall be jointly and severally liable for the debts of the company then existing, and for all that shall be contracted before such report shall be made."

According to the evidence, there was no report made as required by Section 566 of the Revised Statutes, and this action is to recover the amount of the insurance, by virtue of the Section 567. And the principle question is, whether

the right to recover exists as against the executors of the testator Marini, one of the original trustees. There are other questions raised by exceptions in the case, but they are minor and subordinate questions to this principal question, whether Marini ever incurred liability for the amount of insurance to the plaintiff.

The court below, upon the whole evidence, instructed the jury, that if they believed from the evidence that the said Marini tendered his resignation as trustee or director in November, 1886, as testified by the witness Wm. A. Cook, and that the same was accepted as testified by said witness, the plaintiff could not recover against said Marini or his representatives. And the court refused to qualify such instruction, upon request of the plaintiff, to the effect, that if such resignation, and acceptance thereof, were a part of a scheme to defraud the plaintiff, or the plaintiff and others, then such resignation and acceptance would not be operative, or relieve Marini from liability to the plaintiff. This proposed qualification of the previous instruction the court refused, because, in the opinion of the court, there was no evidence before the jury tending to prove such fraudulent scheme as that imputed by the plaintiff. The jury, under the instruction given, found for the defendants, and thereby found that the resignation and acceptance had taken place as testified to by the witness.

*Mr. Leigh Robinson* and *Mr. Conway Robinson, Jr.*, for the appellant:

1. A judgment debt is established against the judgment debtor, and therefore against one who is bound for his debts, unless the judgment can be impeached for fraud or collusion.

That a judgment is conclusive evidence of the indebtedness of a judgment debtor is elementary. *Corse* v. *Sandford*, 14 Iowa, 235 ; 1 Starkie Ev. 317 ; 1 Greenl. Ev., Sec. 538. This is true, whether the person against whom it is offered

as evidence was party to the action in which it was rendered or not. *Dorrell* v. *State*, 83 Ind. 359; *St. Louis Co.* v. *Cravens*, 69 Mo. 72; *Sidensparker* v. *Sidensparker*, 52 Me. 489; *Vogt* v. *Ticknor*, 48 N. H. 245; *Lee* v. *Clark*, 1 Hill, 56; *Presler* v. *Stallworth*, 37 Ala. 402.

Our statute was enacted on May 5, 1870 (16 Stat. 102 to 106, Ch. 80, Sec. 4). The cases construing the New York statute, cited by defendant's counsel in support of their contention, are all subsequent to May 5, 1870. Such decisions cannot be incorporated by construction into the significance of a prior legislative enactment. But the decisions of the courts of New York prior to May 5, 1870, were diametrically opposite, viz., that a judgment against the corporation is, in the absence of collusion and fraud, not only admissible evidence, but *conclusive* evidence against stockholders or against the trustees when the latter are sued under the statute for their liability created by the statute. *Belmont* v. *Coleman*, 21 N. Y. 101; *Moss* v. *Averill*, 10 N. Y. 450; *Moss* v. *Oakley*, 2 Hill, 265; *Moss* v. *McCullough*, 7 Barb. 279; *Miller* v. *White*, 57 Barb. 510; *Peckham* v. *Smith*, 9 How. Pr. 437; *Bolen* v. *Crosby*, 49 N. Y. 183.

The unquestioned rule of law is that where the statutes of one State are adopted by another State the construction they have previously received is adopted with them, *not* the *subsequent* judical construction. *Cathcart* v. *Robinson*, 5 Pet. 265, 280; *Daniels* v. *Cligg*, 28 Mich. 33; *Tyler* v. *Tyler*, 19 Ill. 151; *Att'y General* v. *Brimst*, 3 Wis. 787; *S. P. Bemis* v. *Beeker*, 1 Kan. 218; *Langdon* v. *Applegate*, 5 Porter (Ind.) 333.

2. The present action is under a statute designed to afford a remedy to individuals against trustees who have failed to fulfil their contract or, what is the same thing, their charter obligations, and has no more likeness to a *qui tam* action, or to what is ordinarily intended by a penal action, than would be possessed by an action against sureties for the penalty of a bond. *Neal* v. *Moultrie*, 12 Ga. 104; *Hargroves* v. *Cham-*

*bers,* 30 Ga. 600 ; *Sullivan* v. *Manufacturing Co.,* 14 S. C. 500 ; 2 Morawetz on Corp., Sec. 908.

Even where the original action is for a tort, after judgment, the previous cause of action is so merged therein that the recovery becomes a debt. *Gutta Percha Co.* v. *Mayor,* 108 N. Y. 276 ; *Stephens* v. *Overstolz,* 43 Fed. Rep. 465 ; *Nickerson* v. *Wheeler,* 118 Mass. 298 ; *Norfolk* v. *Gas Co.,* 103 Mass. 162.

In this case the defendants originally sought to maintain that the plaintiff's cause of action was penal in its character and therefore did not survive ; but the court overruled this objection and decided that it was bad in substance. If the point thus sought to be made had any foundation it was waived by pleading over. *Campbell* v. *Wilcox,* 10 Wall. 423 ; *U. S.* v. *Boyd,* 5 How. 30 ; *Railroad Co.* v. *Salmon,* 39 N. J. Law, 399. In a case which went up from the Supreme Court of this District the same doctrine was repeated. *Stanton* v. *Embrey,* 93 U. S. 549.

3. Directors whose term of office is fixed by the charter at a definite period and to await a definite event, cannot divest themselves of their legal status as part of the corporate organization, except in a manner prescribed by law. *Bethany* v. *Sperry,* 10 Conn. 207 ; *Spencer* v. *Champion,* 9 Conn. 543 ; *Westerfield* v. *Raddle,* 67 How. Pr. 204.

In order for a director to be able to say he has resigned he must at least tender his resignation to the proper authority. It is not pretended that this was done, for at the time of the alleged resignation the stockholders had no authority in the premises. There was no law and no by-law which so much as authorized a meeting of stockholders to be called, and had there been either or both there was nothing to show that such authority had been pursued.

4. Directors cannot terminate their agency or accept the resignation of others, if the immediate consequences would be to leave the interests of the company without proper care and protection. Cooper, N. Y. Ins. Law, 132.

*Mr. Calderon Carlisle* and *Mr. William G. Johnson* for the appellees:

1. The judgment in the case between the plaintiff and the insurance company, offered in evidence, was properly excluded. The judgment was *res inter alios acta.* Neither Marini nor his executors were parties to the cause or notified of it, or had opportunity to defend against it, and no statute makes it evidence against him or them. It is settled, without a dissent, and by a long line of decisions in the Court of Appeals of New York, beginning in 1858, in the case of *Garrison* v. *Howe,* 17 N. Y. 458, and coming down to the present time, that the statutory remedy sought to be invoked is penal. *Bruce* v. *Platt,* 80 N. Y. 379; *Stokes* v. *Stickney,* 96 N. Y. 326; *Gadsden* v. *Woodward,* 103 N. Y. 243; *Mechanics' Bank* v. *Bliss,* 35 N. Y. 412; *Wiles* v. *Suydam,* 64 N. Y. 173; *Easterly* v. *Barber,* 65 N. Y. 252; *Knox* v. *Baldwin,* 80 N. Y. 610; *Veeder* v. *Baker,* 83 N. Y. 156; *Pier* v. *George,* 86 N. Y. 613; *Miller* v. *White,* 50 N. Y. 137. The same doctrine has been declared by the Supreme Court of the United States. *Chase* v. *Curtis,* 113 U. S. 457; *Steam Engine Co.* v. *Hubbard,* 101 U. S. 192.

The same construction has been given by the courts of other States. *First National Bank* v. *Price,* 33 Md. 487; *Sturges* v. *Burton,* 8 Ohio St. 215; *Stebbins* v. *Edmunds,* 12 Gray, 203; *Breitung* v. *Lindauer,* 37 Mich. 217. In view of the foregoing rule of construction of the statute, the judgment against the corporation has always been held to be inadmissible. *White* v. *Miller,* 50 N. Y. 137; *Rorke* v. *Thomas,* 56 N. Y. 559; *Hastings* v. *Crew,* 76 N. Y. 9; *Stephens* v. *Fox,* 83 N. Y. 313; *Knox* v. *Baldwin,* 80 N. Y. 610; *Bruce* v. *Platt,* 80 N. Y. 379.

2. In the original act it is provided (16 St. 103) that " when any vacancy shall happen among the trustees, by death, resignation, or otherwise, it shall be filled for the remainder of the year in such manner as may be provided for by the by-laws of the said company." In the revision the same

provision is contained in Section 556, with the words " by death, resignation, or otherwise " omitted.   There is, therefore, an express statutory recognition that " vacancies " may occur " among the trustees." The original act expressly recognizes " resignation " as one of the modes. It is not contended that a trustee or director can, by resigning, escape any liability which has lawfully attached, but no case is cited which holds that a director or trustee may not resign, and we confidently claim that no case can be found asserting so monstrous a doctrine.   Ample effect is given to the law when any liability attaching is continued, notwithstanding such resignation, without holding that a party once becoming a trustee cannot resign if he so desire.   In this case, the only complaint being the failure to file an annual report in January, 1887, there was no liability on the part of Marini, who resigned in November, 1886.

Of course, if Marini could lawfully resign, the correctness of the instruction of the court to the jury upon that point cannot be controverted, while the request to submit to them the *bona fides* of the resignation was properly refused, as there was not a pretence of evidence tending to show any lack of good faith.

3. The judgment in this case should be affirmed for the further reason that, upon the whole record, the plaintiff is not entitled to recover, the action being against the personal representatives, while the cause of action is one which does not survive but abates by the death.  As already shown, the action is a penal one, not in the criminal sense, but in the sen e that it is a punishment for wrongdoing, and not in any respect contractual.   Being penal in its character, the cause of action does not survive. *Stokes* v. *Stickney*, 96 N. Y. 326 ; *Chase* v. *Curtis*, 113 U. S. 457.

It is claimed by the plaintiff's counsel that this cause survived by virtue of the acts of Assembly of Maryland, 1785, Ch. 80 ; 1798, Ch. 101, Subch. 8, Sec. 5 ; and Subch. 14, Sec. 4. But it is submitted that this is not a true construction to

give to the Maryland statute, and is not the construction which has been given to it by the courts of this District, nor by the Court of Appeals of Maryland. Both courts have held that the statute did not provide for a revival of causes of action, but only against the abatement of actions when the causes of action survived at common law. *Roche v. Carrol*, 6 D. C. 79; *B. & O. RR.* v. *Ritchie*, 31 Md. 199; see also *Ott* v. *Kauffman*, 68 Md. 57, 58; *Clark* v. *Carrol*, 59 Md. 180; *Harvey* v. *B. & O. RR.*, 70 Md. 324.

But even if such were not the correct construction of the Maryland statute, it has been affirmatively settled in the Federal courts that no action can be maintained by or against the legal representatives of a deceased party upon any penal statute of the United States. *Schreiber* v. *Sharpless*, 110 U. S. 79; *United States* v. *De Goer*, 38 Fed. Rep. 80; see also *United States* v. *Daniel*, 6 How. 13.

It is submitted, therefore, that as this statute of the United States is a penal one, punishing trustees for the default of the company, the cause of action against Marini, if it ever existed, did not survive, and this fact appearing upon the face of the record, no valid judgment could be entered for the plaintiff.

The suggestion that this defect is cured by pleading over is not tenable. Where the face of the record shows no cause of action in the plaintiff, the judgment must be for the defendant.

Mr. Chief Justice ALVEY delivered the opinion of the court:

It is contended on the part of the plaintiff, that it was not competent to Marini to resign his position of trustee or director of the company before the end of the year for which he was appointed by the certificate of incorporation, and thus relieve himself of liability that might be incurred by reason of the possible non-feasance of the president and a majority of the trustees in failing or neglecting to make and publish

the report as required by Section 566 of the statute. It is argued that because Marini was named in the certificate of incorporation as one of the trustees or directors to serve the first year, therefore he was bound to serve for that length of time, and to incur all the responsibility that attached to the position, by the failure of the president and a majority of the trustees to comply with the requirement of the statute, in making and publishing the report within twenty days from the first day of January next succeeding the date of the incorporation. If this be so, it would seem to be a severe construction of the statute, and a construction that is not in accordance with the decided weight of authority.

The two sections, 566 and 567 of the Revised Statutes, upon which this action is founded, were taken almost literally from the twelfth section of the statute of New York, entitled, "An act to authorize the formation of corporations," etc., passed in 1848, and subsequently amended in particulars not at all affecting the present question. That section has been the subject of repeated adjudication by the highest courts of New York, and it has become the settled interpretation by the courts there that the section is penal in its nature, and therefore not to be extended by construction ; that in an action to enforce a liability thereby created nothing can be presumed against the defendants, but that every fact necessary to establish their liability must be affirmatively proved. Without making special reference to the many cases in the New York courts maintaining this principle of construction, we may quote from the decision of the Supreme Court of the United States, in case of *Chase* v. *Curtis,* 113 U. S. 452, 457, following the New York cases, a concise statement of the result of the New York decisions, in construing the twelfth section of the statute of 1848, which is as follows :

" It is the well settled rule of decision, established by the Court of Appeals of New York in numerous cases, that this section of the statute, to enforce which the present action

5 Ct. App.—21

was brought, is penal in its character, and must be construed with strictness as against those sought to be subjected to its liabilities; citing *Merchants' Bank* v. *Bliss,* 35 N. Y. 412; *Wiles* v. *Suydam,* 64 N. Y. 173; *Easterly* v. *Barber,* 65 N. Y. 252; *Knox* v. *Baldwin,* 80 N. Y. 610; *Veeder* v. *Baker,* 83 N. Y. 156; *Pier* v. *George,* 86 N. Y. 613; *Stokes* v. *Stickney,* 96 N. Y. 323. In the case last cited, the action authorized by it was held to be *ex delicto,* and that it did not survive as against the personal representative of a trustee sought to be charged." And the Supreme Court then proceed to say, that "This rule of construction in reference to this and similar statutory provisions has been heretofore adopted and applied by this court;" citing *Steam Engine Co.* v. *Hubbard,* 101 U. S. 188; *Flash* v. *Conn,* 109 U. S. 371,—cases coming up from other jurisdictions than New York. And in the case of *Steam Engine Co.* v. *Hubbard,* a case coming up from the Circuit Court of the District of Connecticut, after stating the general rule as held by the courts of New York, and citing decisions of other States in support of it, the learned justice, delivering the opinion, says: "Corresponding decisions have been made in other courts, and to such an extent as to justify the remark that the rule is universal."

There is a clear distinction between the case of the liability of stockholders, under provisions of statutes making them liable for the debts of the corporation, which is a contract liability, and the case of the liability of the officers of the corporation, for the failure or neglect to perform a prescribed duty, intended as means of notice and protection to the public. This distinction is clearly pointed out in the case of *Flash* v. *Conn, supra.*

We perceive no reason whatever for any departure from the settled construction of the terms of the Sections 566 and 567 of the Revised Statutes. The remedy there given is as for a penalty, and the provision must be construed with strictness as against parties sought to be made liable.

Had Marini, then, a right to resign, and if so, did such

resignation exonerate him from liability for the subsequent failure of the president and a majority of the trustees or directors to make and publish the report as required by the statute?

To say that a party who accepts an official position in a private corporation has no right to resign or retire from that position, can only be predicated of an express agreement by the party, or a duty imposed by express terms of a statute. It is not contended that there is any such express agreement, or that there is any such express restrictive provision of a statute, applicable to this case; but it is insisted that public policy requires that such restriction should be observed and enforced by the courts. That vacancies should occur in the board of trustees or directors are among the unavoidable things; and that they should occur by resignation is not precluded or forbidden by anything in the terms of the statute. We do not think that there is any distinction to be made between the rights and liabilities of the trustees named in the certificate of incorporation to serve for the first year, and those subsequently elected. They are all alike nominated and elected by the corporators, only by different processes. The Revised Statutes, Section 556, of the same article and class of corporations, expressly provides, that "when any vacancy shall happen among the trustees, it shall be filled for the remainder of the year in such manner as may be provided by the by-laws of the company." The right of resignation has always been conceded to a director of a private corporation, subject, of course, to any and all liabilities that had, by law, been imposed upon him, while in office. If his resignation is effective, he cannot be made liable for any subsequent acts or defaults of the corporation, or of its board of directors, unless by express provision of the statute under which the company is incorporated. In this case, the act of default that is supposed to afford ground for the action, was the neglect or failure of the president and a majority of the trustees, within

twenty days from the 1st of January, 1887, to make a report and have it published in the District as required by Section 566; and upon failure, all the trustees of such company, it is declared, shall be jointly and severally liable for the debts of the company then existing, and for all that shall be contracted before such report shall be made. When this statute declares that all the trustees shall be liable, it certainly does not mean all the trustees who may have held positions in the board at any previous time. It means only the trustees who are in control of the affairs of the corporation at the time of the default made, and who have incurred the penalty by their neglect of duty. If, therefore, Marini was not one of the trustees or directors of the company at the time when the report should have been made, he did not incur the penalty imposed for the neglect of that duty. This would seem to be in accordance with the plain dictates of reason and justice upon the subject.

That Marini had the right to resign as trustee would seem to have been fully recognized by adjudged cases. In the case of *Chandler* v. *Hoag*, 2 Hun, 613, where a trustee had sent in his resignation, and thereafter ceased to act as trustee, it was held that his liability under the statute ceased from that time, although his resignation may not have been accepted. And so it has been held, that if the trustee resign the office, he is not liable for debts of the company in consequence of the subsequent default of the officiating trustees to make and file the report required by the statute. *Squires* v. *Brown*, 22 How. Pr. 35. Indeed, the right to resign seems to be well established upon authority. *Bruce* v. *Platt*, 80 N. Y. 379; *Briggs* v. *Spaulding*, 141 U. S. 132, 154.

The reason of the decisions upon this subject, of the statutory right of action against officers of corporations for nonfeasance or neglect of statutory duty, is well stated in the case of *Breitung* v. *Lindauer*, 37 Mich. 217, decided in 1877, by a very able court, composed of Chief Justice Cooley, Justices Campbell, Marston and Graves. In that case the action

was to charge a director of a corporation with a debt of the company, because the directors had failed to file certain reports as required by the general law of the State, relating to mining and manufacturing corporations. It was held that the statute giving the right of action was penal in its nature, and did not create a contract relation between the creditors and the directors. And in a very clear opinion, concurred in by all the judges, in speaking of the liability of the director, Mr. Justice Marston said : " It cannot be claimed that this defendant is individually liable for the amount of plaintiff's claim against the corporation from anything contained in the act under which the corporation was organized. Neither his position as a stockholder or as a director, nor both combined, renders him liable, nor does his liability attach as a necessary result of the contract entered into. The debt was one against the corporation only; the relation of debtor and creditor arose and existed between the plaintiff and the corporation, and the directors are not, nor is the defendant as a director or stockholder, made liable for the debts of the corporation, either in whole or in part. His liability is imposed by the statute for a violation of its provisions, by the directors or a majority of them intentionally neglecting or refusing to make and file a report as therein directed. It is intended as a punishment for a breach on the part of the officers of their clear statutory duty, and is wholly independent of any injuries which creditors of the corporation may have sustained in consequence of such neglect. This liability depends solely upon the positive provisions of a public statute founded on considerations of public policy, and when, in the opinion of the legislature, such considerations cease to exist, the law may be repealed. Such repeal in no way impairs the rights, privileges or franchises of the corporation, nor of the individuals dealing with such corporation. Their rights and remedies against it are in no way affected or impaired; they remain as they were when the contract was entered into, and so long as they have not

obtained a judgment against the director, they have no such vested right to this remedy against him as would be beyond the power of the legislature to take away. We are of opinion that this liability must be considered in the nature of a penalty, and that part of the statute having been repealed without any saving clause, such penalty cannot now be recovered."

In that case, at the time the debt was contracted, which was sought to be recovered of the director, by certain sections of the general law, relating to mining and manufacturing companies, certain reports were required to be made by the corporation in July of each year, to be signed by a majority of the directors, and filed as therein directed; and by another section of the same general statute, the directors of any such company who should intentionally neglect or refuse to comply with the provisions of the preceding sections, were made jointly and severally liable, in an action founded on the statute, for all the debts of such corporation contracted during the period of such neglect or refusal. By subsequent statutes these provisions were modified, and it was claimed by the defendant that the liability imposed upon the directors before the amendment or modification, for neglect in making the report, was in the nature of a penalty, from which they were relieved by the repeal of the statute; and this defense was fully sustained by the court.

Both upon reason and authority we are clearly of opinion that the right sought to be enforced in this case is in the nature of a penalty; that there was no contractual relation between the plaintiff and Marini, one of the original trustees or directors of the corporation; that Marini had the right to resign his position as trustee of the corporation; and not being one of the trustees or directors at the time when the failure or neglect occurred to make and publish the report, whereby the penalty was incurred, he was not responsible for that penalty. The liability attached to those only whose

duty it was to make and publish the report, or to the trustees then in office.

The qualification that the plaintiff sought to have engrafted on the court's instruction, raising and submitting the question of fraud to the jury, in the making and accepting of the resignation of Marini, as trustee, was properly refused, for the reason assigned by the court. Fraud could not be presumed, and there was no sufficient evidence upon which the question of fraud could have been submitted to the jury.

The testimony offered, and admitted against the objection of the plaintiff, to prove the fact of the resignation of Marini as trustee, would seem to be admissible under the facts stated. The corporation books or minutes of proceedings that might have furnished evidence of such resignation and acceptance thereof, appear to have been taken beyond the jurisdiction of the courts of this District, and would have been difficult, if not impossible, to trace. The certified copy of the acceptance of the resignation, that the witness testified he had procured, he says, has been lost; and under such circumstances, we think, the testimony of the witness to the facts of resignation and acceptance, was receivable, as being the best within the power of the defendants.

The exception taken by the plaintiff to the refusal of the court to admit in evidence the judgment recovered by the plaintiff against the Chesapeake Fire Insurance Company for the amount of the policy, presents a question, in view of the conclusion reached by this court on the main question, as to the right of the plaintiff to recover, that is quite immaterial. If, however, that were not so, we should hold the record of that judgment to be inadmissible as against the defendants, upon the authority of the cases of *Miller* v. *White*, 50 N. Y. 137 ; *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62, and *Chase* v. *Curtis*, 113 U. S. 452, 459.

It follows that the judgment of the court below must be affirmed ; and it is so ordered.

*Judgment affirmed.*